PER CURIAM.
The Florida Bar petitioned this Court to amend the Rules Regulating The Florida Bar in five separate petitions.* Each petition was authorized by the board of governors of The Florida Bar, and notice of intent to file each petition along with a copy of the proposed amendments was duly published in The Florida Bar News. Upon direction of this Court, the five cases were consolidated. We approve the Bar’s proposals with the following modifications.
Proposed rule 1-12.1(a) grants the board of governors the “authority to create or amend Chapters 7 and 9.” We modify the language by removing the words “create or” from the text. Subsection (f) of the same rule provides in part: “Petitions to amend these Rules Regulating The Florida Bar may be filed by the board of governors or by 50 members in good standing, provid *1122 ed that any amendments proposed by members of the bar shall have been filed with the bar and reviewed by the board.” We modify this proposal to read: “Petitions to amend these Rules Regulating The Florida Bar may be filed by the board of governors or by 50 members in good standing, provided that any amendments proposed by members of the bar shall be filed 90 days after filing same with The Florida Bar.”
Accordingly, we approve the amendments as modified and set forth in the appendix to this opinion. These amendments shall take effect January 1, 1992.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, barkett, grimes, KOGAN and HARDING, JJ., concur.
APPENDIX
CHAPTER 1. GENERAL
1-3. MEMBERSHIP
RULE 1-3.4 RESIGNATION CLER DELINQUENT MEMBERS AND CLER EXEMPT MEMBERS
A member of The Florida Bar in good standing may, upon petition to and with the approval of the board of- governors, -resign from The-Florida Bar and thereupon, unless again admitted or reinstated, shall not praetice-law in this state nor be entitled to any privileges and benefits accorded-to active members of-The Florida-Bar in-good standing.
(a) CLER Delinquent Members. Any member who is suspended by reason of failure to complete continuing legal education requirements shall be deemed a delinquent member. A delinquent member shall not engage in the practice of law in this state and shall not be entitled to any privileges and benefits accorded to members of The Florida Bar in good standing. Any member suspended for failure to complete continuing legal education requirements may be reinstated as elsewhere provided in these rules.
(b) CLER Exempt Members. Any member who is exempt from continuing legal education requirements (see rule 6-10.3(c)) shall not engage in the practice of law in this state. Provided, however, that a member exempt from continuing legal education requirements by reason of active military service may practice law in Florida if required to do so as a part of assigned military duties.
RULE 1-3.5 RETIREMENT
Any member of The Florida Bar who shah-have attained the age of seventy-(70) years- of age or — who shall have practiced law in the State of Florida for-thirty-five (35) — years—or who shall establish under rules of procedure adopted by the board of governors that the member is-physically-disabled to-the extent-that the member cannot engage in-the practice' of law may retire from The Florida Bar upon certification — by petition to and approval of the board of governors that such member meets the requirements of this rule-and thereupon, unless again admitted or reinstated^ A retired member shall not practice law in this state except upon petition for reinstatement to and approval of the board of governors; the payment of all dues, fees, costs or other amounts owed to The Florida Bar; and the completion of all outstanding continuing legal education or basic skills course requirements. A retired member shall be entitled to receive such other privileges as the board of governors may authorize.
RULE 1-3.6 DELINQUENT MEMBERS
Any person now or hereafter licensed to practice law in Florida who fails to pay dues or fails to comply with continuing legal education or basic skills course requirements as provided- herein shall be deemed a delinquent member. While occupying the status of a delinquent member, no person shall engage in the practice of law in Florida nor be entitled to any privileges and benefits accorded to active members of The Florida Bar in good standing.
RULE 1-3.7 REINSTATEMENT TO MEMBERSHIP
Members who have retired, been delinquent in the payment of dues or delinquent in continuing legal education requirements for a period of time not in excess of 5 years *1123 are eligible for reinstatement under this rule. Time shall be calculated from the day of the retirement, dues delinquency or continuing legal education delinquency-
inactive members may also seek reinstatement under this rule.
(a) Petitions Required. Persons who have become-delinquent members or persons who have-retired or-resigned from membership in The Floridar-Bar for a period of time not in excess of five- (5) years may be-reinstated to active membership by the board-of governors. The applicant A member seeking reinstatement must file a petition with the board of governors setting forth the reason for such resignation, retirement, or delinquency and showing good cause why the petition for reinstatement should be granted. The petition shall be on a form approved by the board of governors and the petitioner shall furnish such information on such form as the board of governors may require. The petition shall be accompanied by a nonrefundable reinstatement fee of $50.00, payment of all arrear-ages, and, for persons who have resigned or retired or have been delinquent for a period of time longer than three (3) years, a $500.00 cost deposit for investigation of the petition. Inactive members shall not be required to pay the reinstatement fee or costs deposit. No member shall be reinstated if, from the petition or from investigation conducted, the petitioner is not of good moral character and morally fit to practice law or if the member is delinquent in compliance with the continuing legal education or basic skills course requirements.
(b) Members Who Have Retired or Been Delinquent For 3 Years or Less. The-following-procedures shall apply: (1) Persons who -have resigned or retired or have been delinquent Members who have retired or been delinquent for less than three (3) years or less may be reinstated by the executive director under-guidelines provided by the-board of governors or the executive director may refer their petition for consideration by to the board of governors.
(c) Members Who Have Retired or Been Delinquent For Less Than 5 Years, But More Than 3 Years. (2) Persons who have resigned or retired or have been delinquent Members who have retired or been delinquent for less than five (5) years, but more than 3 years, who have not maintained an association with the practice of Florida-law and those - persons who have resigned or retired or have been delinquent for a period from three (3) years to five (5) years who have maintained an association with the practice of -Florida law may shall have be-required by the board of governors to successfully completed 10 hours of continuing legal education courses for each year or portion thereof that the member had or retired or was deemed delinquent or successfully complete all or a portion of The Florida Bar examination before being reinstated-to active membership. (3) Final action of the board of governors denying a petition for reinstatement may be reviewed upon petition to the Supreme Court of Florida.
(d)(c) Persons Members Who Have Retired or Been Delinquent For More Than 5 Years. Members who have resigned or retired or have been deemed delinquent for a period of five (5) years or longer shall not be reinstated except upon application to and approval by the Florida Board of Bar Examiners.
(e)(4) Inactive Members. Persons who have been ilnactive members may be reinstated to membership in good standing by shall apply — for reinstatement by petition filed with the executive director, in the same form and subjeet-te the same procedures as provided in (a) above, except:
(1) ilf the member has been inactive for greater than five- (5) years, but has been authorized to and either actively practiced law in another jurisdiction for the entire period of timey or held a position which requires a license as an attorney, the member may shall be required to complete the Florida Law Update continuing legal education course as part of continuing legal education requirements).
*1124 (2) ilf the member has been inactive for greater than five-(5) years and has net been authorized to but has not actively practiced law in another jurisdiction for the entire period of- time or held a position which requires a license as an attorney for the preceding five (5) years entire period of time, the member may shall be required to complete the basic skills course requirement and the thirty-(30) hour continuing legal education requirement*.
(3) aAn inactive member shall not be eligible for reinstatement until all applicable continuing legal education requirements have been completed and the remaining portion of dues of members in good standing for the current fiscal year have been paid.
1-11. BYLAWS
RULE 1 — 14,2 ^AMENDMENT
T-he bylaws-in-chapter 2 shall be amended-as prescribed in rule 2-1-0. — Chapter 2 shall provide a-reasonable means by-which members-of The- Florida Bar-may propose amendments of the bylaws to the board of governor-s and to this Court.-
1-12. AMENDMENTS
RULE 1-12.1 AMENDMENT TO RULES; AUTHORITY; NOTICE; PROCEDURES; COMMENTS
Petitions for revision of or amendments to these Rules Regulating The Florida Bar, other than chapters 2,- 7, and 9 — will be entertained by — this -court-when presented by-the board of governors or-by not-Tewer-than fifty- (50) active members of The Florida Bar. — Notice of intention-to file-such petition on a specified-date together with a copy of the proposed amendment shall be published-in The-Florida Bar News not less than thirty (30) days prior to-the filing-of such petition. — The court w-ill thereafter accept objections-or comments on such peti-
(a) Authority To Amend. The board of governors of The Florida Bar shall have the authority to amend chapters 7 and 9 of these Rules Regulating The Florida Bar, consistent with the notice, publication and comments provided below. Only the Supreme Court of Florida shall have the authority to amend all other chapters of these Rules Regulating The Florida Bar.
(b) Proposed Amendments. Any member of The Florida Bar in good standing or a section or committee of The Florida Bar may request the board of governors to consider an amendment to these Rules Regulating The Florida Bar-
ic) Board Review of Proposed Amendments. The board of governors shall review proposed amendments by referral of the proposal to an appropriate committee thereof for substantive review. After substantive review, an appropriate committee of the board shall review the proposal for consistency with these rules and the policies of The Florida Bar. After completion of review, a recommendation concerning the proposal shall be made to the board.
(d) Notice of Proposed Board Action-Notice of the proposed action of the board on a proposed amendment shall be given in an edition of The Florida Bar News which is published prior to the meeting of the board at which the board action is taken. The notice shall identify the rule(s) to be amended and shall state in general terms the nature of the proposed amendments.
(e) Comments by Members. Any member may request a copy of the proposed amendments and may file written comments concerning same. The comments shall be filed with the executive director sufficiently in advance of the board meeting to allow for copying and distribution to the members of the board.
(f) Approval of Amendments. Amendments to other than chapters 7 and 9 of these Rules Regulating The Florida Bar shall be by petition to the Supreme Court of Florida. Petitions to amend these Rules Regulating The Florida Bar may be filed by the board of governors or by 50 members in good standing, provided that any amendments proposed by members of the bar shall be filed 90 days after filing same with The Florida Bar.
(g) Notice of Intent to File Petition. Notice of intent to file a petition to amend these Rules Regulating The Florida Bar *1125 shall be published in The Florida Bar News at least 30 days before the filing of the petition. The notice shall set forth the text of the proposed amendments, shall state the date the petition will be filed and shall state that any comments or objections must be filed within 30 days of filing the petition. A copy of all comments or objections shall be served on the Executive Director of The Florida Bar and any persons who may have made an appearance in the matter.
(h) Action by the Supreme Court of Florida. The court shall review all proposed amendments filed under this rule and such amendments shall not become effective until an order is issued approving same. Final action of the court shall be reported in The Florida Bar News.
(i) Waiver. On good cause shown, the court may waive any or all of the provisions of this rule.
1-13. TIME
RULE 1-13.1 TIME
(a)Computation. In computing any period of time prescribed or allowed by the Rules Regulating The Florida Bar, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, Sunday or legal holiday, in which event the period shall run until the end of the next day which is neither a Saturday, Sunday or legal holiday-
lb) Additional Time After Service by Mail. When a person has the right or is required to do some act or take some proceeding within a prescribed period after service of a notice or other paper and the notice or paper is served by mail, 5 days shall be added to the prescribed period.
CHAPTER 2. BYLAWS OF THE FLORIDA BAR
2-10. AMENDMENTS
RULE 2-10.1 PROPOSED AMENDMENTS
Any member of The Florida Bar in good standing or any interested person may propose amendments to this chapter by delivering a copy of the proposed amendment to the executive director of The Florida-Bar at least ten (10) days prior to any regular meeting of the board-of governors.
(a) The executive-director shall furnish a copy of-such proposai-to each member of the- boardr-of-governors at least twenty-four (24) hours before any-vote on such proposed amendment is taken in the board of governors.
(b) The proposed amendment must receive the affirmative vote e-f-a majority of the membership of the-board of governors.
(c) The proposed amendment shall be published-⅛ The Florida Bar News at least twenty (20) days before--the meeting of the board of-governors immediately following the meeting at which- the proposal was approved-by- the board of governors.
(d) If the proposed — amendment is not changed except for clerical errors, the-executive director shall within twenty (20) days after the — publication— file the proposed amendment-with the clerk of the Supreme Court of — Florida together with a copy of the notice referred to herein-and certified excerpts of the minutes-of the board.of governors reflecting the — action of the board of governors on such proposal, said filing to be in sufficient copies that-each member of the Supreme Court of Florida may be furnished a copy-of- such proposal.-
(e) At any time within fifteen (15)-days of the adjournment of the board of governors meeting following- the publication of the proposed amendment, -any-member of The Florida Bar, any interested person, or any bar-association may file with the- Supreme Court of Florida^objections or comments addressed to the proposed amendment.
(f) The- proposed amendment shall become effective fifty (50) days after amendment and proof of prescribed publication are filed as required unless:
(1) The Court orders-otherwise; or
(2) A petition seeking review signed by fifty (50) members of-The--Florida Bar in good standing is filed-with the Supreme Court of Florida prior to the-effective date *1126 or fifty (50) members of-T-he Florida Bar, in good standing, file objections or-comments as authorized herein to specifically -seek review of the-proposed amendment by the Supreme Court of Florida-in which event the amendment will not become effective until the expiration of ninety (90) days from the filing of-the proposed amendment with the clerk of-the Supreme Cour-t-unless otherwise ordered by the-Cour-k
(g) If the board of governors-shall--refuse to- adopt an amendment to this chapter on the subject matter of-any proposal submitted in accordance with- this ■ rule, such refusal may be-reviewed by the filing of-a petition in the Supreme Court of Florida seeking-review within ninety (90) days of the adjournment of the meeting-at- which the board of governors refuses-the adoption of-such amendment signed by fifty (50) members of The Florida Bar) in good-stand-
Amendments to these bylaws may be made in the manner set forth in rule 1-12.
RULE 2-10,2 AMENDMENT AT MEETINGS OF THE FLORIDA BAR
Amendments to this chapter -may be adopted by a majority vote-of the members in good standing present and voting-at -any regular-or special meeting of The Florida Bar in the following manner:
(a) The proposed amendment — shall - be submitted to the executive-director-of The Florida-6 ar at least sixty (60) days-prior to the commencement of the-meeting.
(b) The proposed amendment shall be published in The Florida Bar News at least thirty-(30) days before the- commeneement of the meeting.-
(c) The proposed amendment shall be published in any- official-program of the meeting-
id) Copies of-the proposed amendment shall be available for-distribution to the membership attending the-meeting
(⅜) Any proposal adopted shall be filed with the clerk of the-Supreme Court together with copies of the required notices and a certificate of the executive-director certifying the vote taken at the meeting,
(f) The amendment will thereafter become effective unless:
(1) The supreme court orders otherwisej or
(2) The board-of governors of The Florida Bar by a two-thirds vote elects to file a petition seeking review of- the proposed amendment with — the Supreme Court of Florida in which event the-amendment shall not become effective unless and until ordered -by- the Court.
CHAPTER 3. RULES OF DISCIPLINE
3-7. PROCEDURES
RULE 3-7.1 CONFIDENTIALITY
All matters including files, preliminary investigation reports, interoffice memoran-da, records of investigations, and the records in trials and other proceedings under these rules, except those disciplinary matters conducted in circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information which is part of the public record as defined in these rules.
(a) Public Record. The public record shall consist of the record before a grievance committee, the record before a referee, the record before the Supreme Court of Florida and any reports, correspondence, papers, recordings and/or transcripts of hearings furnished to, served on or received from the respondent or the complainant.
(b) Circuit Court Proceedings. Proceedings under rule 3-3.5 shall be public information. Contempt proceedings authorized elsewhere in these rules shall be public information even though the underlying disciplinary matter is confidential as defined in these rules.
(c) Limitations on Disclosure. Any material provided to The Florida Bar which is confidential under applicable law shall remain confidential and shall not be dis *1127 closed except as authorized by the applicable law. If this type of material is made a part of the public record, that portion of the public record may be sealed by the grievance committee chairman, the referee or the Supreme Court of Florida.
(d) Disclosure of Information. Unless otherwise ordered by this Ccourt or the referee in proceedings under this rule, nothing in these rules shall prohibit the complainant, respondent or any witness from disclosing the existence of proceedings under these rules or from disclosing any documents or correspondence served on or provided to those persons.
(e) Response to Inquiry. Representatives of The Florida Bar, authorized by the board of governors, shall respond to specific inquiriesT concerning matters which are in the public domain, but otherwise confidential under the rules, by acknowledging the status of the proceedings.
(f) Notice to Law Firms. When a disciplinary file is opened the respondent shall disclose to his or her current law firm and, if different, respondent’s law firm at the time of the act(s) giving rise to the complaint, the fact that a disciplinary file has been opened. Disclosure shall be in writing and in the following form:
A complaint of unethical conduct against me has been filed with The Florida Bar. The nature of the allegations are _This notice is provided pursuant to rule 3-7.1(f) of the Rules Regulating The Florida Bar.
The notice shall be provided within fifteen (15) days of notice that a disciplinary file has been opened and a copy of the above notice shall be served on The Florida Bar.
(g) Pending Investigations. Disciplinary matters pending at the initial investigatory and grievance committee levels shall be treated as confidential by The Florida Bar, except as provided in rule 3-7.1(e).
(h) Minor Misconduct Cases. Any case in which a finding of minor misconduct has been entered, by action of the grievance committee or board, shall become public information.
(i) Probable Cause Cases. Any disciplinary case in which a finding of probable cause for further disciplinary proceedings has been entered shall be public information. For purposes of this paragraph a finding of probable cause shall be deemed to have been made in those cases authorized by rule 3-3.2(a), for the filing of a formal complaint without the prior necessity of a finding of probable cause.
(j) No Probable Cause Cases. Any disciplinary case which has been concluded by a finding of no probable cause for further disciplinary proceedings shall become public information.
(k) Production of Disciplinary Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena, issued by a regulatory agency, may provide any documents which are a portion of the public record, even if the disciplinary proceeding is confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(/) Notice to Judges. Any judge of a court of record may be advised as to the status of a confidential disciplinary case and may be provided with a copy of the public record. The judge shall maintain the confidentiality of the matter.
(m) Evidence of Crime. The confidential nature of these proceedings shall not preclude the giving of any information or testimony to authorities authorized to investigate alleged criminal activity.
(n) Alcohol and Drug Treatment. That an attorney has voluntarily sought, received, or accepted treatment for alcoholism or alcohol or drug abuse shall be confidential and shall not be admitted as evidence in disciplinary proceedings under these rules unless agreed to by the attorney who sought the treatment.
It is the purpose of this paragraph to encourage attorneys to voluntarily seek advice, counsel, and treatment available to attorneys, without fear that the fact it is sought or rendered, will or might cause *1128 embarrassment in any future disciplinary matter.
(o) Response to False or Misleading Statements. If public statements which are false and or misleading are made about any otherwise confidential disciplinary case, The Florida Bar may disclose all information necessary to correct such false or misleading statements.
(p) Disclosure by Waiver of Respondent. Upon written waiver executed by a respondent, The Florida Bar may disclose the status of otherwise confidential disciplinary proceedings and provide copies of the public record to:
(1) The Florida Board of Bar Examiners or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of an applicant for admission to practice law in that jurisdiction; or
(2) Florida judicial nominating commissions or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of a candidate for judicial officer; or
(3) The Governor of the State of Florida for the purpose of evaluating the character and fitness of a nominee to judicial office.
CHAPTER 4. RULES OF PROFESSIONAL CONDUCT
4-1. CLIENT-LAWYER RELATIONSHIP
RULE 4-1.13 ORGANIZATION AS CLIENT
(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.
(b) If a lawyer for an organization knows that an officer, employee, or other person associated with the organization is engaged in action, intends to act, or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization or a violation of law which reasonably might be imputed to the organization and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters, and any other relevant considerations. Any measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization. Such measures may include among others:
(1) Asking reconsideration of the matter;
(2) Advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and
(3) Referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the organization as determined by applicable law.
(c) If, despite the lawyer’s efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the lawyer may resign in accordance with rule 4-1.16.
(d) In dealing with an organization’s directors, officers, employees, members, shareholders, or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization’s interests are adverse to those of the constituents with whom the lawyer is dealing.
(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 4-1.7. If the organization’s consent to the dual representation is required by rule 4-1.7, the consent shall be given by an appropriate official of the or *1129 ganization other than the individual who is to be represented, or by the shareholders.
Comment
The entity as the client
An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders, and other constituents. Officers, directors, employees, and shareholders are the constituents of the corporate organizational client. The duties defined in this comment apply equally to unincorporated associations. “Other constituents” as used in this comment means the positions equivalent to officers, directors, employees, and shareholders held by persons acting for organizational clients that are not corporations.
When one of the constituents of an organizational client communicates with the organization’s lawyer in that person’s organizational capacity, the communication is protected by rule 4-1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client’s employees or other constituents are covered by rule 4-1.6. This does not mean, however, that constituents of an organizational client are the clients of the lawyer. The lawyer may not disclose to such constituents information relating to the representation except for disclosures explicitly or impliedly authorized by the organizational client in order to carry out the representation or as otherwise permitted by rule 4-1.6.
When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer’s province. However, different considerations arise when the lawyer knows that the organization may be substantially injured by action of a constituent that is in violation of law. In such a circumstance, it may be reasonably necessary for the lawyer to ask the constituent to reconsider the matter. If that fails, or if the matter is of sufficient seriousness and importance to the organization, it may be reasonably necessary for the lawyer to take steps to have the matter reviewed by a higher authority in the organization. Clear justification should exist for seeking review over the head of the constituent normally responsible for it. The stated policy of the organization may define circumstances and prescribe channels for such review, and a lawyer should encourage the formulation of such a policy. Even in the absence of organization policy, however, the lawyer may have an obligation to refer a matter to higher authority, depending on the seriousness of the matter and whether the constituent in question has apparent motives to act at variance with the organization’s interest. Review by the chief executive officer or by the board of directors may be required when the matter is of importance commensurate with their authority. At some point it may be useful or essential to obtain an independent legal opinion.
In an extreme case, it may be reasonably necessary for the lawyer to refer the matter to the organization’s highest authority. Ordinarily, that is the board of directors or similar governing body. However, applicable law may prescribe that under certain conditions highest authority reposes elsewhere; for example, in the independent directors of a corporation.
Relation to other rules
The authority and responsibility provided in paragraph (b) are concurrent with the authority and responsibility provided in other rules. In particular, this rule does not limit or expand the lawyer’s responsibility under rule 4-1.6, 4-1.8, 4-1.16, 4-3.8, or 4-4.1. If the lawyer’s services are being used by an organization to further a crime or fraud by the organization, rule 4 — 1.2(d) can be applicable.
Government agency
The duty defined in this rule applies to governmental organizations. However, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality *1130 and assuring that the wrongful official act is prevented or rectified, for public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. Therefore, defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context. Although in some circumstances the client may be a specific agency, it is generally the government as a whole. For example, if the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the government as a whole may be the client for purposes of this rule. Moreover, in a matter involving the conduct of government officials, a government lawyer may have authority to question such conduct more extensively than that of a lawyer for a private organization in similar circumstances. This rule does not limit that authority. See note on scope.
Clarifying the lawyer’s role
There are times when the organization’s interest may be or becomes adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest that the lawyer cannot represent such constituent and that such person may wish to obtain independent representation. Care must be taken to assure that the constituent understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent and that discussions between the lawyer for the organization and the constituent may not be privileged.
Whether such a warning should be given by the lawyer for the organization to any constituent may turn on the facts of each case.
Dual representation
Paragraph (e) recognizes that a lawyer for an organization may also represent a principal officer or major shareholder.
Derivative actions
Under generally prevailing law, the shareholders or members of a corporation may bring suit to compel the directors to perform their legal obligations in the supervision of the organization. Members of unincorporated associations have essentially the same right.' Such an action may be brought nominally by the organization, but usually is, in fact, a legal controversy over management of the organization.
The question can arise whether counsel for the organization may defend such an action. The proposition that the organization is the lawyer’s client does not alone resolve the issue. Most derivative actions are a normal incident of an organization’s affairs, to be defended by the organization’s lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer’s duty to the organization and the lawyer’s relationship with the board. In those circumstances, rule 4-1.7 governs who should represent the directors and the organization.
Representing related organizations
Consistent with the principle expressed in paragraph (a) of this rule, an attorney or law firm who represents or has represented a corporation (or other organization) ordinarily is not presumed to also represent, solely by virtue of representing or having represented the client, an organization (such as a corporate parent or subsidiary) that is affiliated with the client. There are exceptions to this general proposition, such as, for example, when an affiliate actually is the alter ego of the organizational client or when the client has revealed confidential information to an attorney with the reasonable expectation that the information would not be used adversely to the client’s affiliate(s). Absent such an exception, an attorney or law firm is not ethically precluded from undertaking representations adverse to affiliates of an existing or former client.
*1131 4-4. TRANSACTIONS WITH PERSONS OTHER THAN CLIENTS
RULE 4-4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer. Notwithstanding the foregoing, an attorney may, without such prior consent, communicate with another’s client in order to meet the requirements of any statute or contract requiring notice or service of process directly on an adverse party, in which event the communication shall be strictly restricted to that required by statute or contract, and a copy shall be provided to the adverse party’s attorney.
Comment
This rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between two (2) organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule. Compare rule 4 — 3.4(f). This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.
CHAPTER 5. RULES REGULATING TRUST ACCOUNTS
5-1. GENERALLY
RULE 5-1.1 TRUST ACCOUNTS
Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or set-off for attorney fees, and a refusal to account for and deliver over such property upon demand shall be deemed a conversion. This is not to preclude the retention of money or other property upon which the lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collection. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate, or fraudulent. In a controversy alleging a clearly excessive, extortionate, or fraudulent fee, announced willingness of an attorney to submit a dispute as to the amount of a fee to a competent tribunal for determination may be considered in any determination as to intent or in mitigation of discipline; provided, such willingness shall not preclude admission of any other relevant admissible evidence relating to such controversy, including evidence as to the withholding of funds or property of the client, or to other injury to the client occasioned by such controversy.
(a) Trust Accounts Required. Any bank or savings and loan association account maintained by a member of The Florida Bar to comply with rule 4-1.15, Rules *1132 of Professional Conduct, is and shall be clearly labeled and designated as a trust account. Any safe deposit box used in connection with the practice of law in Florida maintained by a member of The Florida Bar to comply with rule 4-1.15 shall be located in this state unless the client otherwise consents in writing. A member of The Florida Bar shall advise any institution in which such deposit box is located that it may include property of clients.
(b)Trust Accounts as Official Records. A member of The Florida Bar shall preserve or cause to be preserved the records of all bank and savings and loan association accounts or other records pertaining to the funds or property of a client maintained in compliance with rule 4-1.15 for a period of not less than six-(6) years subsequent to the final conclusion of the representation of a client relative to such funds or property. Such records shall include checkbooks, canceled checks, check stubs, vouchers, ledgers and journals, closing statements, accountings or other statements of disbursements rendered to clients or other parties with regard to trust funds, or similar equivalent records clearly and expressly reflecting the date, amount, source, and reason for all receipts, withdrawals, deliveries, and disbursements of the funds or property of a client. Such records shall be kept pursuant to these rules as a specific prerequisite to the right to receive, deliver and disburse funds or property of a client and to have a public aspect relating to the protection of clients and to fitness of a member of The Florida Bar to practice law. In any instance of an alleged violation by a member of The Florida Bar of this rule or of any of the Rules of Professional Conduct, such records insofar as they may relate in any way to the transaction, occurrence, or client in question shall be produced by the members of The Florida Bar for inspection, audit, and copying by a designated representative of The Florida Bar upon the direction of this court, a grievance committee, the board of governors if acting pursuant to rule 3-7.45(b), or a referee. Such records or copies thereof shall be admissible in evidence in any proceeding under this rule; provided notice of such intended use shall be given to any client involved, if practicable, unless such client is already aware of such intended use, and upon good cause shown by such client the admission of the same shall be under such conditions as shall be reasonably calculated thereafter to protect the confidences of such client in the event that the proceedings otherwise become public records. Permissible means of protection shall not prejudice the respondent and may include but are not limited to excision, in camera production, retention in sealed envelopes, or similar devices. Failure to maintain such records or to produce them upon such direction shall constitute ground for disciplinary action under this rule without regard to any other matter. The cost of any audit or investigation necessitated by such failure may be taxed against a respondent.
(c) Trust Accounting. Minimum trust accounting records shall be maintained and minimum trust accounting procedures must be followed by all attorneys practicing in Florida who receive or disburse trust money or property.
(d) Interest on Trust Accounts (IOTA) Program.
(1) Definitions. As used in rule 5-1.1(d), the term:
a. “Nominal or short term” describes funds of a client or third person which, pursuant to rule 5-1.1(d)(7), the lawyer has determined cannot practicably be placed at interest for the benefit of the client or third person.
b. “Foundation” means The Florida Bar Foundation, Inc.
c. “IOTA account” means a trust account described in rule 5-1.1(d)(2).
(2) Required Participation. All nominal or short-term funds belonging to clients or third persons which are placed in trust with any member of The Florida Bar practicing from an office or other business location within the State of Florida shall be deposited into one or more interest-bearing trust accounts for the benefit of the Foundation, except as provided in rule 4-1.15 *1133 with respect to funds maintained other than in a bank account, or as provided in rule 5-1.2(a). Only trust funds which are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of rule 5-1.1(d).
(3) Eligible Financial Institutions. An IOTA account shall be established with any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws. The funds in each IOTA account shall be subject to withdrawal, upon request, and without delay.
(4) Interest Rates. The rate of interest on any IOTA account shall not be less than the rate paid by the financial institution to non-IOTA account depositors. Higher rates offered by the financial institution to customers whose deposits exceed certain time or quantity minimums may be obtained by a lawyer or law firm for IOTA accounts on some or all of the deposited funds so long as there is no impairment of the right to immediately withdraw or transfer principal.
(5) Remittance Instructions. Lawyers or law firms shall direct the financial institution:
a. Frequency of Remittances. To remit interest on the balance in the IOTA account, in accordance with the financial institution’s standard practice for non-IOTA account depositors, less reasonable service charges or fees, if any, in connection with the IOTA account, at least quarterly, to the Foundation.
b. Statement to the Foundation. To transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer or law firm’s IOTA trust account number as assigned by the financial institution, the rate of interest applied, the period for which the remittance is made, the total interest earned during the remittance period, the amount of any service charges or fees assessed during the remittance period, and the net amount of interest remitted for the period; and
c.Report to Law Firm. To transmit to the depositing lawyer or law firm, for each remittance, a report showing the amount paid to the Foundation, the rate of interest applied and the period for which the report is made.
(6) Notice to Foundation. Lawyers or law firms shall advise the Foundation at Post Office Box 1553, Orlando, Florida 32802-9919, of the establishment of an IOTA account. Such notice shall include: the IOTA account number as assigned by the financial institution; the name of the lawyer or law firm on the IOTA account; the financial institution name; the financial institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the State of Florida, which has established an IOTA account.
(7) Determination of Nominal or Short-Term Funds. The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
a. The amount of a client’s or third-person’s funds to be held by the lawyer or law firm;
b. The period of time such funds are expected to be held;
c. The likelihood of delay in the relevant transaction(s) or proceeding(s);
d. The cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person;
e. Minimum balance requirements and/or service charges or fees imposed by the financial institution.
*1134 The determination of whether a client’s or third person’s funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
(8) Small IOTA Accounts. The Foundation may establish procedures for a lawyer or law firm whose nominal or short>term trust funds cannot reasonably be expected to produce, or — have not produced interest income net of reasonable financial institution-service charges or fees, to be authorized to-maintam-an interest-free-trust-ae-count for client- and third-person funds which-are nominal or short terna to maintain an interest-free trust account for client and third-person funds which are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable financial institution service charges or fees.
(9) Confidentiality. The Foundation shall protect the confidentiality of information regarding a lawyer’s or law firm’s trust account obtained by virtue of rule 5-1.1(d).
(e) Unidentifiable Trust Fund Accumulations and Trust Funds Held for Missing Owners. When an attorney’s trust account contains an unidentifiable accumulation of trust funds or property, or trust funds or property held for missing owners, such funds or property shall be so designated. Diligent search and inquiry shall then be made by the attorney to determine the beneficial owner of any unidentifiable accumulation or the address of any missing owner. If the beneficial owner of an unidentified accumulation is determined, the funds shall be properly identified as his or- her the lawyer’s trust property. If a missing beneficial owner is located, the trust funds or property shall be paid over or delivered to the beneficial owner if he or she such is then entitled to receive the same. Trust funds and property which remain unidentifiable and funds or property which are held for missing owners after being designated as such shall, after diligent search and inquiry fails to identify the beneficial owner or owner’s address, be disposed of as provided in chapter 717, Florida Statutes.
(f) Disbursement Against Uncollected Funds. A lawyer generally may not use, endanger, or encumber money held in trust for a client for purposes of carrying out the business of another client without the permission of the owner given after full disclosure of the circumstances. However, certain categories of trust account deposits are considered to carry a limited and acceptable risk of failure so that disbursements of trust account funds may be made in reliance on such deposits without disclosure to and permission of clients owning trust account funds subject to possibly being affected. Except for disbursements based upon any of the sfe-(6) categories of limited-risk uncollected deposits enumerated below, a lawyer may not disburse funds held for a client or on behalf of that client unless the funds held for that client are collected funds. For purposes of this provision, “collected funds" means funds deposited, finally settled, and credited to the lawyer’s trust account. Notwithstanding that a deposit made fey-a to the lawyer^ to his-or her trust account has not been finally settled and credited to the account, the lawyer may disburse funds from his or her the trust account in reliance on such deposit under any of the following circumstances:
(1) When the deposit is made by certified check or cashier’s check.
(2) When the deposit is made by a cheek or draft representing loan proceeds issued by a federally or state-chartered bank, savings bank, savings and loan association, credit union, or other duly licensed or chartered institutional lender.
(3) When the deposit is made by a bank check, official check, treasurer’s check, money order, or other such instrument issued by a bank, savings and loan association, or credit union within the State of Florida when the lawyer has reasonable and prudent grounds to believe the instrument will clear and constitute collected *1135 funds in the lawyer’s trust account within a reasonable period of time.
(4) When the deposit is made by a check drawn on the trust account of a lawyer licensed to practice in the State of Florida or on the escrow or trust account of a real estate broker licensed under chapter 475 of ⅝% Florida Statutes, when the lawyer has a reasonable and prudent belief that the deposit will clear and constitute collected funds in his or her the trust account within a reasonable period of time.
(5) When the deposit is made by a check issued by the United States government, the State of Florida, or any agency or political subdivision of the State of Florida.
(6) When the deposit is made by a check or draft issued by an insurance company or title insurance company (not a title agency) authorized to do business in the state of Florida and the lawyer has a reasonable and prudent belief that the instrument will clear and constitute collected funds in his or-her the trust account within a reasonable period of time.
A lawyer’s disbursement of funds from ⅜ or-her a trust account in reliance on deposits that are not yet collected funds in any circumstances other than those set forth above, when it results in funds of other clients being used, endangered, or encumbered without authorization, may be grounds for a finding of professional misconduct. In any event, such a disbursement is at the risk of the lawyer making the disbursement. If any of the deposits fail, the lawyer upon obtaining knowledge of the failure must immediately act to protect the property of his or her the lawyer’s other clients. However, if the lawyer accepting any such check personally pays the amount of any failed deposit or secures or arranges payment from sources available to him or her the lawyer other than trust account funds of other clients, the lawyer shall not be considered guilty of professional misconduct.
RULE 5-1.2 TRUST ACCOUNTING RECORDS AND PROCEDURES
(a) Applicability. The provisions of these rules apply to all trust funds received or disbursed by members of The Florida Bar in the course of their professional practice of law within the State of Florida except special trust funds received or disbursed by attorney as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document where the trust funds are maintained in a segregated special trust account and not the general trust account and wherein this special trust position has been created, approved, or sanctioned by law or an order of a court which has authority or duty to issue orders pertaining to maintenance of such special trust account.
(b) Minimum Trust Accounting Records. The minimum trust accounting records which shall be maintained are:
(1) A separate bank account or accounts and, if utilized, a separate savings and loan association account or accounts. Such accounts shall be located in the State of Florida unless the client otherwise directs, in writing, or unless the financial institution in which the funds are maintained voluntarily submits to the jurisdiction of the Supreme Court of Florida. Such voluntary submission to the jurisdiction of the Supreme Court of Florida shall be on the form prescribed by the board of governors of The Florida Bar. The account or accounts shall be in the name of the lawyer or law firm and clearly labeled and designated as a “trust account.”
(2) Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:
a. The date and source of all trust funds received; and
b. The client or matter for which the funds were received.
(3) Original canceled checks, all of which must be numbered consecutively.
(4) Other documentary support for all disbursements and transfers from the trust account.
(5) A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
*1136 a. The identification of the client or matter for which the funds were received, disbursed, or transferred;
b. The date on which all trust funds were received, disbursed, or transferred;
e. The check number for all disbursements; and
d. The reason for which all trust funds were received, disbursed, or transferred.
(6) A separate file or ledger with an individual card or page for each client or matter, showing all individual receipts, disbursements, or transfers and any unex-pended balance, and containing:
a. The identification of the client or matter for which trust funds were received, disbursed, or transferred;
b. The date on which all trust funds were received, disbursed, or transferred;
c. The check number for all disbursements; and
d. The reason for which all trust funds were received, disbursed, or transferred.
(7) All bank or savings and loan association statements for all trust accounts.
(c) Minimum Trust Accounting Procedures. The minimum trust accounting procedures which shall be followed by all attorneys practicing in Florida who receive or disburse trust money or property are:
(1) The lawyer shall cause to be made monthly:
a. Reconciliations of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and any other items necessary to reconcile the balance per bank with the balance per the checkbook and the cash receipts and disbursements journal; and
b. A comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the two (2) totals and reasons therefor.
(2) At least annually, a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
(3) The above reconciliations, comparisons, and listing shall be retained for at least six-(6) years.
(4) The lawyer or law firm shall authorize and request any bank or savings and loan association where he or she is a signatory on a trust account to notify Staff Counsel, The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32301 32399-2300, in the event any trust check is returned due to insufficient funds or uncollected funds, absent bank error.
(5) The lawyer shall file with The Florida Bar between June 1 and August 15 of each year a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.
(d) Audits. The following shall be cause for The Florida Bar to order an audit of a trust account:
(1) Failure to file the trust account certificate required by rule 5-1.2(c)(5);
(2) A trust account cheek is returned for insufficient funds or for uncollected funds, absent bank error;
(3) A petition for creditor relief is filed on behalf of an attorney;
(4) Felony charges are filed against an attorney;
(5) An attorney is adjudged insane or mentally incompetent or is hospitalized under the Florida Mental Health Act;
(6) A claim against the attorney is filed with the Clients’ Security Fund;
(7) When requested by a grievance committee or the board of governors; or
(8) Upon court order.
(e) Cost of Audit. Audits conducted in any of the circumstances enumerated in paragraph (d) above shall be at the cost of the attorney audited only when the audit reveals that the attorney was not in substantial compliance with the trust accounting requirements. It shall be the obligation of any attorney who is being audited to produce all records and papers concerning property and funds held in trust and to *1137 provide such explanations as may be required for the audit. Records of general accounts are not required to be produced except to verify that trust money has not been deposited thereto. If it has been determined that trust money has been deposited into a general account, all of the transactions pertaining to any firm account will be subject to audit.
(f) Failure to Comply With Subpoena.
(1) Members of the bar are under an obligation to maintain trust accounting records as required by these rules and, as a condition of the privilege of practicing law in Florida, may not assert any privilege personal to the lawyer that may be applicable to production of same in these disciplinary proceedings.
(2) Notice of noncompliance with a subpoena may be filed with the Supreme Court of Florida only if a grievance committee or a referee shall first find that no good cause exists for failure to comply. A grievance committee or referee shall hear the issue of noncompliance and issue findings thereon within 30 days of the request for issuance of the notice of noncompliance.
(3) After notice is filed with the Supreme Court of Florida, by The Florida Bar, that a member of the bar has failed to fully comply with a properly issued subpoena directing the production of any trust accounting records which are required by these rules, unless good cause for the failure to comply is shown, the member may be suspended from the practice of law in Florida, by order of the Supreme Court of Florida, until such time as the member fully complies with the subpoena and/or until further order of the court.
(4) Any member subject to suspension under this rule may petition the court, within 10 days of the filing of the notice, to withhold entry of the order of suspension or at any time after entry of an order of suspension may petition the court to terminate or modify the order of suspension. If the court determines it necessary to refer the petition to terminate or modify the suspension to a referee for receipt of evidence, the referee proceedings shall be conducted in the same manner as proceedings before a referee on a petition to withhold, terminate or modify an order of temporary suspension, as elsewhere provided in these rules.
CHAPTER 6. LEGAL SPECIALIZATION AND EDUCATION PROGRAMS
6-2. FLORIDA DESIGNATION PLAN
SCHEDULE A
Administrative and Governmental Law
Admiralty
Antitrust and Trade Regulation
Appellate Practice
Aviation Law
Bankruptcy
Collections
Corporation and Business Law
Entertainment, Arts and Sports Law
Environmental Law
General Practice
Immigration and Naturalization
International Law
Labor and Employment Law
Patent, Trademark and Copyright
Real Property Law
Securities
Wilte; ■ Estates and Estate Planning
6-3. FLORIDA CERTIFICATION PLAN
RULE 6-3.6 RECERTIFICATION
(a) No certificate shall last for a period longer than five (5) years.
(b) Each area of certification established under this chapter shall contain requirements and safeguards for the continued proficiency of any certificate holder. The following minimum standards shall apply:
(1) A satisfactory showing of substantial involvement during the period of certification in the particular area for which certification was granted.
(2) A satisfactory showing of such continuing legal education in the area for which certification is granted, but in no event less than ten — (10) hours per year.
*1138 (3) Satisfactory peer review and professional ethics record in accordance with rule 6-3.5(c)(6).
■ (4) Any applicant for recertification who is not, at the time of application for recerti-fication a member in good standing of The Florida Ear or any other bar or jurisdiction in which the applicant is admitted, as a result of discipline, disbarment, suspension or resignation in lieu thereof, shall be denied recertification. The fact of a pending disciplinary complaint or malpractice action against an applicant for recertification shall not be the sole basis to deny recertifi-cation.
(45) The payment of any fees prescribed by the plan.
(c) Any applicant for recertification who has either failed to meet the standards for recertification or has allowed the certificate to lapse must meet all the requirements for initial certification as set out in the area’s standards.
6-7. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED ESTATE PLANNING AND PROBATE LAWYER
RULE 6-7.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Estate Planning and Probate Lawyer.” The purpose of the standards is to identify those lawyers who practice in the area of estate planning and probate and have the demonstrated special knowledge, skills, and proficiency to be properly identified to the public as certified estate planning and probate lawyers.
RULE 6-7.2 DEFINITIONS
(a) “Estate planning and probate” is the practice of law dealing with all aspects of the analysis and planning for the conservation and disposition of estates, giving due consideration to the applicable tax consequences, both federal and state; the preparation of legal instruments to effectuate estate plans; administering estates, including tax related matters, both federal and state; and probate litigation.
(b) The “practice of law” for this area is defined as set out in rule 6-3.5(c)(1). Notwithstanding anything in the definition to the contrary, legal work done primarily for any purpose other than legal advice or representation (including, but not limited to, work related to the sale of insurance or retirement plan or work in connection with the practice of a profession other than the law) shall not be treated as the practice of law. Service as a judge of any court of record shall be deemed to constitute the practice of law. Practice of law which otherwise satisfies these requirements but which is on a part-time basis will satisfy the requirement if the balance of the applicant’s activity is spent as a teacher of estate planning or probate subjects in an accredited law school.
RULE 6-7.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. Every applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of five (5) years as of the date of application.
Notwithstanding the definition of “practice of law” in rule 6-7.2(b), receipt of an LL.M. degree in taxation or estate planning and probate (or such other related fields approved by the board and estate planning and probate certification committee) from an approved law school shall be deemed to constitute one year of the practice of law for purposes of the five-year practice requirement (but not the five-year bar membership requirement) under this section. Provided, however, an applicant may not receive credit for more than one year of practice for any twelve-month period under this section; accordingly, for example, an applicant who, while being engaged in the practice of law receives an LL.M. degree by attending night classes, would not receive credit for the practice of law requirement by virtue of having received the LL.M. degree.
*1139 (b) Substantial Involvement. Every applicant must demonstrate substantial involvement in the practice of law in estate planning, probate or probate related activities during the five (5) years immediately preceding the date of application, including devoting not less than for-ty-(40) percent of practice to estate planning and probate matters in this state during each of the two (2)years immediately preceding application. Service as a judge in the probate division of the circuit court of this state during six-(6) months or more of a calendar year shall satisfy a year of substantial involvement. Except for the two (2) years immediately preceding application, upon an applicant’s request and the recommendation of the estate planning and probate certification committee, the board of legal specialization and education may waive the requirement that the fi-ve-(5) years be “immediately preceding” the date of application if the board of legal specialization and education determines the waiver is warranted by special and compelling circumstances. Except for the two (2) years immediately preceding application, receipt of an LL.M. degree in estate planning and probate (or such other degree containing substantial estate planning and probate content as approved by the board of legal specialization and education) from an approved law school may substitute for one year of substantial involvement. An applicant must furnish information concerning the frequency of work and the nature of the issues involved. For the purposes of this section the “practice of law” shall be as defined in rule 6-7.2(b) except that it shall also include time devoted to lecturing and/or authoring books or articles on estate planning and probate if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the estate planning and probate certification committee^ but written or oral supplementation may be required.
(c) Peer Review. Every applicant shall submit the names and addresses of five (5) other attorneys who are familiar with the applicant’s practice, not including attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s reputation for professional competence and substantial involvement in the field of estate planning and probate law. The board of legal specialization and education and the estate planning and probate certification committee may authorize references from persons other than attorneys in such cases as they deem appropriate. The board of legal specialization and education and the estate planning and probate certification committee may also make such additional inquiries as they deem appropriate to complete peer review, as provided elsewhere in these rules.
(d)Education. Every applicant must demonstrate that during the three-year period immediately preceding the date of his or — her the application, he or she that the applicant has met the continuing legal education requirements in estate planning and probate as follows. The required number of hours shall be established by the board of legal specialization and education and shall in no event be less than ninety (90) hours. Credit for attendance at continuing legal education seminars shall be given only for programs which are directly related to estate planning and probate. The education requirement may be satisfied by one or more of the following:
(1) Attendance at continuing legal education seminars meeting the requirements set forth above;
(2) Lecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) Authoring articles or books published in professional periodicals or other professional publications;
(4) Teaching courses in “estate planning and probate” at an approved law school or other graduate level program presented by a recognized professional education association;
(5) Completing such home study programs as may be approved by the board of legal specialization and education and the estate planning and probate certification committee, subject to the limitation that no *1140 more than fifty (50) percent of the required number of hours of education may be satisfied through home study programs; and
(6) Such other methods as may be approved by the board of legal specialization and education and the estate planning and probate certification committee.
The board of legal specialization and education and the estate planning and probate certification committee shall, by rule or regulation, establish standards applicable to this rule, including, but not limited to, the method of establishment of the number of hours allocable to any of the above-listed paragraphs. Such rules or regulations shall provide that hours shall be allocable to each separate but substantially different lecture, article or other activity described in paragraphs (2), (3), and (4) above.
(e) Examination. The applicant must pass an examination which will be practical and comprehensive objective and designed to demonstrate special knowledge, skills, and proficiency in estate planning and probate law.
RULE 6-7.4 RECERTIFICATION
Recertification must be obtained every five-(5) years. To be eligible for recertifi-cation, an applicant must meet the following requirements:
(a) A satisfactory showing, as determined by the board of legal specialization and education and the estate planning and probate certification committee, of continuous and substantial involvement in estate planning and probate law throughout the period since the last date of certification. The demonstration of substantial involvement of more than forty (40) percent during each year after certification or prior recertification shall be made in accordance with the standards set forth in rule 6-7.3(b).
(b) The applicant must demonstrate be or — she has completedion of at least one hundred twenty-five (125) hours of approved continuing legal education since the filing of the last application for date of certification. This requirement shall be satisfied by the applicant’s participation in continuing legal education approved by The Florida Bar pursuant to rule 6-7.3(d)(1) through (6).
(c) A written, short, objectiver-raail-in examination covering important changes in the -law- — Failure of the examination shall necessitate the applicant-passing the examination-for new applicants-required by-rule ⅜-⅞3(6),
(dc) An applicant for recertification shall submit the names and addresses of three (3) currently board certified estate-planning and probate lawyers individuals who are active in estate planning and probate including but not limited to lawyers, trust officers, certified public accountants, and judges who are familiar with bis-or her the applicant’s practice, excluding lawyers persons who are currently employed by or practice in the applicant’s law firm, who can attest to the applicant’s reputation for abillty-ef-practice and professional competence and substantial involvement in the field of estate planning and probate law throughout during the period since the last date of certification. The board of legal specialization and education and or the estate planning and probate certification committee may authorize solicit references from persons other than board — certified lawyers those submitted by the applicant in such cases as they deem appropriate. The board of legal specialization and education and or the estate planning and probate certification committee may also make such additional inquiries as they it deems appropriate.
(d) The board of legal specialization and education may deny certification based upon any information received from statements of reference the peer review or from any individual referenced in paragraph (c), above.
(e) If, after reviewing the material submitted by an applicant for recertificationT the board of legal specialization--and education-and and the peer review, the estate planning and probate certification committee determines the applicant may not meet the standards is for estate planning and probate law certification established under this chapter, the board of legal specializa *1141 tion and education and the estate planning and probate certification committee may require, as a condition of recertification, that the applicant pass a» the examination given by the board of legal specialization and education estate planning and probate certification committee to new applicants.
6-10. CONTINUING LEGAL EDUCATION REQUIREMENT RULE
RULE 6-10.1 CONTINUING LEGAL EDUCATION REQUIREMENT
(a) Preamble. It is of primary importance to the public and to the members of The Florida Bar that attorneys continue their legal education throughout the period of their active practice of law. To accomplish that objective, each member of The Florida Bar (hereinafter referred to as “member”) shall meet certain minimum requirements for continuing legal education.
(b) Effective Date. Continuing legal education requirements established by this rule shall become effective on January 1, 1988.
(c) Reporting Requirement. Each member except those exempt under rule 6-10.3(c)(4) and (5) shall report compliance with continuing legal education requirements in the manner set forth in the policies adopted for administration of this plan.
(d) Fees. The board of governors of The Florida Bar may require a reasonable fee to be paid to The Florida Bar in connection with each member’s report concerning compliance with continuing legal education requirements.
(e) Rules. The board of legal specialization and education of The Florida Bar shall adopt policies necessary to implement continuing legal education requirements subject to the approval of the board of governors.
RULE 6-10.2 ADMINISTRATION
(a)Board of Legal Specialization and Education. The board of legal specialization and education shall administer the continuing legal education requirements as herein provided. Any member affected by an adverse decision of the board of legal specialization and education may appeal as provided in rule 6-240,- 6-10.5.
(b) Delegation of Authority. The board of legal specialization and education may delegate to the staff of The Florida Bar any responsibility set forth herein, except that of granting a waiver or exemption from continuing legal education requirements.
(c) Scope of Board of Legal Specialization and Education Activities. The board of legal specialization and education shall cooperate with and answer inquiries from staff pertaining to continuing legal education requirements and make recommendations to the board of governors concerning continuing legal education requirements, including but not limited to:
(1) Approved education courses;
(2) Approved alternative education methods;
(3) Number of hours credit to be allowed for various education efforts;
(4) Established educational standards for satisfaction and completion of approved courses;
(5) Additional areas of education and/or practice approved for credit under continuing legal education requirements;
(6) Modification or expansion of continuing legal education requirements;
(7) Adoption of additional standards or regulations pertaining to continuing legal education requirements;
(8) Amount of reporting or delinquency fees; and
(9) General administration of continuing legal education requirements.
(d) Maintenance of Records. The Florida Bar shall maintain a record of each member’s compliance or noncompliance with continuing legal education requirements.
RULE 6-10.3 MINIMUM CONTINUING LEGAL EDUCATION STANDARDS
(a) Applicability. Every member except those exempt under rule 6-10.3(c)(4) and (5) shall comply and report concerning *1142 compliance with tiie continuing legal education requirements and subject only to the exemptions contained herein,-every member shall comply with the educational requirements of- the continuing--legal education-requirements.
(b) Minimum Hourly Continuing Legal Education Requirements. Each member shall complete a minimum of thirty- (30) credit hours of approved continuing legal education activity every three (3) years. Two (2) of the hours must be in the area of legal ethics.
(c) Exemptions.
(1) Active military service.
(2) Undue hardship.
(3) Nonresident members not delivering legal services or advice on matters or issues governed by Florida law.
(4) Members of the full-time federal judiciary who are prohibited from engaging in the private practice of law.
(5) Justices of the Florida Supreme Court of Florida and judges of the district courts of appeal, circuit and county courts and such other judicial officers and employees as may be designated by the Supreme Court.
(6) Inactive members of The Florida Bar.
(d) Course Approval. Course approval-for credit shall be as set forth in policies adopted pursuant to this rule., — provided that sSpecial policies shall be adopted for courses sponsored by governmental agencies for employee attorneys7 which policies shall exempt such courses from any course approval fee and may exempt such said courses from other requirements as determined by the board of legal specialization and education.
(e) Accreditation of Hours. Accreditation shall be as set forth in the policies adopted pursuant to this rule. If a course is presented or sponsored by or has received credit approval from an organized state bar (whether integrated or voluntary), such course shall be deemed an approved course for purposes of this rule. and-payment of a course-approval fee shall not be required.
(f) Full-time Government Employees. Credit hours shall be given full-time government employees for courses presented by governmental agencies. Application for credit approval may be submitted by the full-time government attorney before or after attendance, without charge.
(g) Skills Training Preadmission. The board of legal specialization and education may approve for CLER credit a basic skills or entry level training program developed and presented by a governmental entity. If approved, credit earned through attendance at such course, within 8 months prior to admission to The Florida Bar, shall be applicable under rule 6-10,3(b).
RULE 6-10.4 REPORTING REQUIREMENTS
(a) Reports Required. Each member except those exempt under rule 6-10.3(c)(4) and (5) shall file a report showing compliance or noncompliance with the continuing legal education requirements. Such report shall be in the form prescribed by the board of legal specialization and education.
(b) Time For Filing. The report shall be filed with The Florida Bar no later than the last day of such member’s applicable reporting period as set forth in the rules and regulations.
RULE 6-10.5 NON GQMPLI AN CEAND SANCTIONS DELINQUENCY AND APPEAL
(a) Extended time -for- compliance Delinquency. If a member fails to complete and report the minimum required continuing legal education hours by the end of the applicable reporting period, the member shall be deemed delinquent in accordance with rule 1-3.6 of the Rules Regulating The Florida Bar, report of noncompliance shall be accompanied -by-a specific plan-for completing the necessary- hours within one hundred twenty (120) days of the reporting date-o-r the member shall establish eligibility for an exemption under rule 6-10.3(c). Any-specific plan shall be deemed-approved by — the board of legal specialization and education unless within-thirty (30) days-af *1143 ter receipt of the report, the board of -legal specialization and education notifies the member--that the plan has not been approved, — Completion of-a^specific plan shall be reported-by the-member to the board of legal specialization and-education no-later than fifteen (15) days-foHowing~the-espiration of the applicable time for the plan. Failure of the member to complete the plan within the-specified time or to report within the time-set forth-for reporting such completion-shall invoke the sanctions set forth below-
(b) Notice — of Noncompliance. - If a member fails to comply with these rules in any respect the board- of legal specialization and- education shall promptly-se-nd a notice of-noncompliance-to such member. The notice shall specify-the nature of the noncompliance and state- that if a-specific plan is-not- submitted or if a hearing to establish an exemption or show reasonable cause for noncompliance is not requested, the member’s name shall be filed with the Supreme-Court of -Florida. — The Florida Bar shall recommend that all members on such list be- treated in -the same manner as members delinquent in the payment of dues. Nothing contained in this paragraph shall be construed to extend the periods of time for completing a -specific plan as set forth in paragraph (a)-above.
(c) Hearing on Notice of Noneompliance. If-Sr-hearing is-requested, such hearing shall be governed by section 6.11- of the policies-adepted pursuant to this rule. The party requesting the hearing may be represented by counsel, — Witnesses shall be sworn, and, if requested by the affected member a complete electronic record or transcript-o-f the-proceedings and testimony shall be made, at the expense of the affected member-, — If it is determined that compliance has been accomplished, the matter shall be-dismissed and the board of legal specialization and education’s records-shall reflect such compliance.
(d) Procedures — Upon—Noncompliance After Hearing. — If it is determined-after hearing that complianee has not-been accomplished the board of legal specialization and education shall:
(1) -If reasonable cause for — noncompliance has been determined, allow the member-requesting ⅛-hearing fifteen (15) days to-file a specific plan for-correcting -the noneompliance. Such specific plan shall require compliance within one hundred twenty (120) days following the filing of the specific plan. — Unless the board of legal specialization and-education rejects the specific-plan within thirty (30)-days after its filing, the specific plan shall — be deemed accepted. — Evidence of completion of the plan shall be reported to the board of legal specialization and education not later than fifteen (15) days following the-expiration of the-time period -for such specific plan. — If the-member fails-to file an acceptable specific.plan or fails to complete the plan within the time-provided or-fails to file evidence of completion of-the plan within the time provided, the board of legal specialization and education shall proceed as though there was no reasonable cause for noncompliance.
(2) Upon a finding by the board of legal specialization and-education of no reasonable cause for noncompliance, — file a record of the matter, including a copy-of the findings and determination and -recommendation-of ⅛⅜ board-of legal-specialization and education with-the Supreme Court of Florida, Notice of the findings- of the board of legal-specialization and education shall-be served on the affected member of the Bar.-
(3) Upon filing-of a notice of confirmation of noncompliance or of the record of a board of legal specialization and education hearing determining noaGompliance, — the Supreme Court of Florida shall' enter an order as it deems- appropriate, which may include suspension.
(eb) Appeal to the Board of Governors. A member deemed delinquent decision of the-board of legal specialization and education may be appealed to the board of governors of The Florida Bar. Appeals to the board of governors shall be governed by the policies promulgated under these rules.
*1144 (fc) Appeal to the Supreme Court of Florida. A decision of the board of governors may be appealed by the affected member to the Supreme Court of Florida. Appeals to the Ccourt shall be governed by the policies promulgated under these rules.
(gd) Exhaustion of Remedies. A member must exhaust each of the remedies provided under these rules in the order enumerated before proceeding to the next remedy.
(he) Tolling Time for Compliance. An appeal shall toll the time a member has for showing compliance with continuing legal education requirements.
RULE 6-10.6 REINSTATEMENT
Any member deemed delinquent suspended-from-the practice of law for failure to meet the continuing legal education requirements may be reinstated by the executive director board-of■ governors upon a showing that the noncompliance has been corrected and upon payment to The Florida Bar of a uniform reinstatement fee, as established by the board of governors.
RULE 6-10.7 CONFIDENTIALITY
Unless directed otherwise by the Supreme Court of Florida, the files, records and proceedings of the board of legal specialization and education, as they relate to or arise out of any failure of a member to satisfy the continuing legal education requirements, shall be deemed confidential and shall not be disclosed, except in the furtherance of the duties of the board of legal specialization and education or upon request of the member, in writing, or as they may be introduced in the evidence or otherwise produced in proceedings under these rules. Nothing herein shall be construed to prohibit The Florida Bar from advising that a member has been suspended from the active practice of law for failure to meet continuing legal education requirements.
RULE 6-10.8 DISCIPLINARY ACTION
The board of legal specialization and education may refer misrepresentation of a material fact concerning compliance with or exemption from continuing legal education requirements for disciplinary proceedings under chapter 3 or chapter 4 of the Rules Regulating The Florida Bar.
CHAPTER 7. CLIENTS’ SECURITY FUND RULES
7-4. AMENDMENTS
RULE 7-4.1 GENERALLY
The Clients’ Security Fund Rules may be amended in accordance with rule 2-40 1^ 12.1.
CHAPTER 9. GROUP AND PREPAID LEGAL SERVICES RULES
9-4. AMENDMENTS
RULE 9-4.1 GENERALLY
Rules governing group and prepaid legal services may be amended in accordance with rule 2-40 1-12.1.

 We have jurisdiction. Art. V, § 2(a), Fla. Const.