**AMERICAN CAN COMPANY, Plaintiff-Appellant,**

**v.**

**CITRUS FEED CO. et al., Defendants-Appellees.**

**No. 29651.**

United States Court of Appeals, Fifth Circuit.

Jan. 5, 1971.

Rehearing Denied March 4, 1971.

Thomas C. MacDonald, Jr., Tampa, Fla., for plaintiff-appellant.

Robert S. Pittman, Bartow, Fla., Rom W. Powell, Winter Park, Fla., Donald E. Wilkes, Daytona Beach, Fla., James M. McEwen of Gibbons, Tucker, McEwen, Smith, Cofer & Taub, Tampa, Fla., for defendant-appellee Citrus Feed Co., A. R. Carver, Lakeland, Fla., of counsel.

Before TUTTLE, DYER and SIMP-SON, Circuit Judges.

DYER, Circuit Judge:

From the District Court's order of disqualification of Covington & Burling, a law firm acting as American Can Company's trial counsel in a judgment creditor's suit against Citrus Feed Company and others, American appeals. The disqualification resulted solely because of the Covington firm's relationship with John Allison, an attorney whom American had retained as local counsel in Tampa, Florida. The District Judge applied a "double imputation" of knowledge theory—*i. e.*, the judge initially imputed to Allison the knowledge of his partner in the firm of Mac-Farlane, Ferguson, Allison & Kelly who had handled a tax matter for some of the defendants in the instant case, and then imputed Allison's imputed knowledge to a member of the Covington firm who had consulted with Allison in regard to this controversy—to disqualify the Covington firm. We reverse.

The District Judge found the following pertinent facts, which are not seriously disputed. On January 17, 1966, Allison filed suit on behalf of American Can Company, which he had represented locally since 1942, against Sunshine Packers, Inc. American Can secured a monetary judgment, affirmed by this Court on appeal.[1] Thereafter, American Can made continuous efforts to collect the judgment by levy, garnishment, and legal proceedings supplementary to and in aid of execution. In connection with these efforts, Allison and Miller, a member of the Covington firm who had also served as counsel for American Can and whom American Can employed in the action against Sunshine in 1967, took the deposition of David Prosser, Jr., a defendant in the present case. Through counsel Prosser objected to certain questions; he noted that Allison was, and is, a partner of an attorney who was acting as tax counsel for the Prossers.

As the District Judge stated, the problems involved in such representation can best be understood by considering the thrust of the present suit, filed by Allison and Miller on April 25, 1969, on behalf of American Can against Citrus

---

1. Sunshine Packers, Inc. v. American Can Co., 5 Cir., 1968, 395 F.2d 86.

Feed and the Prossers. In this suit, American Can contends that the Prossers (David, Jr., and his father), or one of them, were the real parties in interest in Sunshine Packers, Inc., and related corporations, that Sunshine's assets were dissipated, that preferential payments and other fraudulent transfers of corporate assets were made, and that the affairs of the several corporations were intentionally mismanaged to the detriment of their creditors. Thus American Can seeks judgment against the Prossers and others.

In August 1969, six months after the possibility of conflicting interests had first been asserted at the deposition and four months after the complaint in the present suit had been filed, the Prossers moved to disqualify Allison and Miller, as well as all members of their respective firms, from further representation of American Can in this case. The Prossers averred that Ericksen, Allison's partner in the MacFarlane firm, had represented them during an Internal Revenue Service investigation that involved "the same line of endeavor" as the present case and that therefore a conflict of interest between Ericksen and Allison existed. As to the Covington firm, the motion alleged "that Miller has benefited from any knowledge acquired by Allison."

Regarding Ericksen's relationship with the Prossers, the District Judge found that in December 1965 the latter were undergoing audit by the Internal Revenue Service. At the suggestion of their local counsel, the Prossers employed Ericksen, a tax expert, to represent them in the investigation. Subsequently they delivered tax records to Ericksen's office, where they remained until returned, at the Prossers' request, after this suit was filed. While he recognized that the pertinence of these records to American Can's suit was disputed, the District Judge stressed the importance of the Prossers' contentions. The court found "that the records were of such nature that they could have been of benefit to Allison" in pressing Ameri-

can Can's claim against the Prossers. However, the judge made no finding as to the substantiality of the relationship between these tax records and the American Can case. Moreover, he concluded that there was no evidence of an exchange of information between Ericksen and Allison regarding their endeavors. He commented that the Prossers had not suggested, and the court had not found, a lack of good faith on the part of Ericksen, Allison, or Miller. Each had made every effort to comply with the Canons of Ethics "as they were considered and honestly interpreted." In fact, Ericksen discontinued representation of the Prossers soon after the conflict of interest question was first raised. Following the District Court's hearing concerning the Motion for Disqualification, Allison and the MacFarlane firm withdrew from the present case.

Nevertheless, the District Judge determined that the Prossers' motion to disqualify Miller and all members of the firm with which he is associated from further participation in this controversy should be granted. Relying in part on W. E. Bassett Co. v. H. C. Cook Co., 2 Cir. 1962, 302 F.2d 268, the judge reasoned: "Miller * * * knows or is presumed to know whatever Allison does about the Prossers' files and records. Allison could have known [what Ericksen knew about the Prossers]. The Prossers are not sure that he does not know." Thus, he intimated, public policy demands that the knowledge imputed to Allison be imputed to Miller, and thence to the entire Covington firm.

Having accepted the District Judge's findings of fact, we must reject his conclusions. Neither decisional precedents nor ethical precepts support his rationale. Initially, it is important to characterize the issue here: whether the order disqualifying Miller and the Covington firm from representing American Can in this action was proper involves ethical, not legal considerations. Furthermore, the question is one of appearances rather than substance, for the District Judge specifically absolved Ericksen, Allison

and Miller of complicity with respect to the Prosser records.

When the Prossers' Motion for Disqualification was filed, the American Bar Association Canons of Ethics were still effective. In their preamble the Canons admonish members of the Bar that their conduct should merit the approval of all good men; they must "abstain from all appearance of evil." United States v. Trafficante, 5 Cir. 1964, 328 F.2d 117, 120, citing 1 Thessalonians 5:22. Specifically pertinent to this controversy are Canon 6 and its corollary Canon 37. In part, Canon 6 reminds attorneys:

> It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. * *
>
> The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client *with respect to which confidence has been reposed.*

(emphasis added.) Canon 37 provides in part:

> It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of *these* confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client. * * *

(emphasis added.)

 Manifestly these Canons articulate the Bar's desire to safeguard the sacrosanct privacy of the attorney-client relationship. Baird v. Koerner, 9 Cir. 1960, 279 F.2d 623, 635; Consolidated Theatres, Inc. v. Warner Bros. Circuit Management Corp., 2 Cir. 1954, 216 F.2d 920, 927. Under certain circumstances, an attorney must conceal even the identity of a client, not merely his communications, from inquiry. Baird v. Koerner, *supra* 279 F.2d at 629–630, 635. That one ceases to be a client after communication with the attorney makes no difference; the lawyer's lips must continue to remain sealed. T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., S. D.N.Y.1953, 113 F.Supp. 265, 268–269; *see* United States v. Trafficante, *supra* 328 F.2d at 120; E. F. Hutton & Co., Inc. v. Brown, S.D.Tex.1969, 305 F.Supp. 371, 387, 395. *See also* Note, "Disqualification of Attorneys for Representing Interests Adverse to Former Clients," 64 Yale L.J. 917 (1955). To disqualify his former attorney, the former client need show no more than that the matters involved in the pending suit in which his former attorney represents his adversary are substantially related to the matters or cause of action in which the attorney previously represented him, the former client. T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., *supra* 113 F.Supp. at 268–269; *accord,* Shelley v. The Maccabees, E.D.N.Y.1960, 184 F. Supp. 797, 800, cert. denied, 365 U.S. 818, 81 S.Ct. 699, 5 L.Ed.2d 696; *see* E. F. Hutton & Co., Inc. v. Brown, *supra* 305 F.Supp. at 395. As the Canons stipulate, this liability to disqualification extends also to employees, and former employees, of the attorney who has been privy to a client's communications. Consolidated Theatres, Inc. v. Warner Bros. Circuit Management Corp., *supra* 216 F.2d at 927; *cf.* United States v. Trafficante, *supra.* Finally,

> all authorities agree that all members of a partnership are barred from participating in a case from which one partner is disqualified. * * * [O]nce a partner is thus vicariously disqualified for a particular case, the subsequent dissolution of the partner-

ship cannot cure his ineligibility to act as counsel in that case.

Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures, Inc., 2 Cir. 1955, 224 F.2d 824, 826–827, aff'g S.D.N.Y., 130 F.Supp. 514; *accord,* Harmar Drive-In Theatre, Inc. v. Warner Bros. Pictures, Inc., 2 Cir. 1956, 239 F.2d 555, 557; W. E. Bassett Co. v. H. C. Cook Co., D.Conn.1962, 201 F.Supp. 821, 824, aff'd, 2 Cir., 302 F.2d 268. However, new partners of a vicariously disqualified partner, to whom knowledge has been imputed during a former partnership, are not necessarily disqualified: they need show only that the vicariously disqualified partner's knowledge was imputed, not actual. Laskey Bros. of W. Va. Inc. v. Warner Bros. Pictures, Inc., *supra* 224 F.2d at 827.

If these ethical principles are applied to the instant case, it becomes evident that disqualification of Miller and the Covington firm is unnecessary. Indeed, resort to so drastic a measure would not only be unwise, but would also set disturbing precedent. If the Prossers' rationale were accepted, imputation and consequent disqualification could continue *ad infinitum.* It is not surprising, then, that the courts have carefully limited their travels in this area.

To substantiate a motion for disqualification, the movant must first show that an attorney-client relationship exists or has existed. Once this is shown, liability to disqualification extends to partners and employees, and former partners and employees, of that lawyer who participated in the attorney-client relationship. Here the Prossers have proven that they engaged Ericksen, and thus established an attorney-client relationship. If the Prossers satisfied all other criteria, this relationship would disqualify all other members of the MacFarlane firm, including Allison. However, Allison's disqualification could not extend to Miller, a member of the Covington firm. In this action neither Ericksen nor Allison nor any member of their firm associated Miller. In-

stead, American Can employed Miller's firm. Thus, the relationship between the MacFarlane and Convington firms was not one of employer-employee. Nor were they in partnership. These firms acted as co-counsel, each responsible to and compensated by American Can, not the other. Consequently knowledge admittedly imputed to Allison should not then be re-imputed to Miller. Disqualification of Miller and the Covington firm must fail on this ground. *See* W. E. Bassett Co. v. H. C. Cook Co., *supra* 201 F.Supp. at 825; T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., *supra* 113 F.Supp. at 271–272.

Carriage of this imputation-on-an-imputation to its logical terminus could lead to extreme results in no way required to maintain public confidence in the bar. This case is illustrative. Carver, an attorney for the Prossers in this action, was instrumental in retaining Ericksen to represent the Prossers with regard to their tax problems. Over the years he remained connected with the MacFarlane firm, apparently as co-counsel to the Prossers, with regard to the tax controversy. Here he appears "of counsel" for the Prossers. If the District Court's re-imputation theory is correct, Carver would be susceptible to disqualification. In fact, all counsel for the Prossers could be disqualified. This would ensue because Allison's knowledge of American Can's confidences would be imputed to his partner Ericksen, and from Ericksen to Carver, his co-counsel in the tax matter, whose relationship to Ericksen seems identical to that between Miller and Allison. If Carver were disqualified, other counsel for the Prossers must suffer the same consequences. Ultimately all counsel for the parties in the present suit could be disqualified. Arguably, imputation would extend even to the principals—rendering prosecution and defense of this suit impossible. Such a rule would be unsound logically and indefensible practically. When considerations of wasted time and unnecessary expense are added to the weight against the rule, it becomes clear that so

rigid a commandment has no place in the legal realm.

 Moreover, the Prossers have not satisfied the second element of the disqualification test. They alleged but did not prove that confidential disclosures made to Ericksen were substantially related to American Can's suit against them. Ostensibly the District Judge was more concerned with the Prossers' evaluation of the relevance of these disclosures to American Can's suit than with the actual relationship between these communications and the instant case. Accepting the contentions of one party as postulates, he concluded that the appearance of propriety necessitated disqualification of Miller and the Covington firm. Nevertheless, although the District Judge found that the Prossers' communications to Ericksen *could* have benefited Allison, he did not state that they *would* have benefited him—*i.e.*, that the relationship between the Prossers' disclosures and the American Can case was substantial. Absent such a specific finding, imputation of Ericksen's knowledge to Allison may have been unnecessary in the factual context of this case. To further impute this knowledge to a member of an independent firm would surely be erroneous. Because the MacFarlane firm has already withdrawn from this controversy, we do not decide whether disqualification as to them would have been proper. Furthermore, we do not determine whether disqualification of Miller and the Covington firm would have been correct if Allison had actual knowledge of information communicated to Ericksen, and substantially related to the American Can controversy.

In conclusion, the Prossers have not manifested an attorney-client relationship between themselves and any member or employer of the Covington firm. Also, they have failed to prove that confidential communications to Ericksen were substantially related to the instant case. Their failure on either ground would be enough to reverse the disqualification order. The order neither protects the sacrosanct privacy of the attorney-client relationship nor fosters the appearance of sanctity. Consequently the order appealed from is

Reversed.