[No. G029541. Fourth Dist., Div. Three. Mar. 26, 2002.]

JEFFREY FRAZIER, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
SHEILA AMES et al., Real Parties in Interest.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.A.

---

**COUNSEL**

Hartley & Hartley and Joseph M. Hartley for Petitioner.

No appearance for Respondent.

Law Offices of Federico C. Sayre, Federico C. Sayre, Daniel H. Cargnelutti, Roy L. Comer; Law Office of Gary Sodikoff and Gary J. Sodikoff for Real Parties in Interest.

---

**OPINION**

**MOORE, J.**—Original proceedings in mandate.[1]

In this case, we examine the outer boundaries of the application of the substantial relationship test for vicarious disqualification of counsel. The

---

[1]Orange County Superior Court case No. 814953 has been consolidated with case Nos. 817527, 00CC01942, 00CC0660, 00CC08210, 00CC09559, 00CC08347, 00CC11144, 00CC10643, 00CC10682, 00CC13531, 00CC14783 and 00CC12124.

superior court entered an order disqualifying petitioner's *Cumis*[2] counsel because the insurer's counsel, which had a conflict of interest of which it was then unaware, covered a few depositions for *Cumis* counsel. Petitioner seeks a writ of mandate directing the superior court to vacate its disqualification order, contending the court overextended the rules of vicarious disqualification. We agree. In this context, the disqualification of *Cumis* counsel would require a double imputation of knowledge of confidential information—first from one member of the law firm representing the insurer to another member of that firm, and second from the latter attorney to a different law firm entirely. Case law does not support the double imputation. We grant the petition.

I

FACTS

Sheila Ames and others (real parties in interest or real parties) filed suit against Jeffrey Frazier (petitioner) in connection with his involvement in the Willed Body Program at the University of California, Irvine. Altogether, petitioner was named as a defendant in approximately 15 lawsuits concerning the program. Most of the cases have been consolidated.

Petitioner's insurer hired Murchison & Cumming to defend the matters. Subsequently, the insurer decided to appoint *Cumis* counsel. The insurer approved petitioner's request for Hartley & Hartley, petitioner's general counsel, to act as *Cumis* counsel. It also chose to continue using Murchison & Cumming to represent its own interests.

Murchison & Cumming Attorney Dan Longo, whose office is in Santa Ana, was designated to represent the insurer. Early on, Attorney Joseph M. Hartley was unavailable to attend certain scheduled depositions on petitioner's behalf. Longo agreed to cover the depositions in question, which began in March 2001. In April 2001, Longo informed Hartley he had come to learn that, before they filed suit, the real parties in interest had contacted George Genzmer, one of the partners in the Los Angeles office of Murchison & Cumming, about possible representation. Ultimately, real parties did not retain Murchison & Cumming. Nonetheless, sometime after the firm realized what had happened, it withdrew from representation of the insurer.

---

[2]"Although Civil Code section 2860 speaks of 'independent' counsel, we use the eponym '*Cumis* counsel,' based on *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]. We acknowledge that section 2860 partially changed the *Cumis* rule." (*Dynamic Concepts, Inc.* v. *Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1001, fn. 1 [71 Cal.Rptr.2d 882].)

Real parties filed a motion to disqualify Hartley & Hartley, based on their prior attorney-client relationship with Murchison & Cumming. They asserted there was a presumption that Murchison & Cumming had divulged confidential information to Hartley & Hartley. The trial court agreed and granted the motion. Petitioner filed this petition, seeking a writ of mandate directing the trial court to vacate its order disqualifying Hartley & Hartley. We issued an alternative writ of mandate and stayed discovery in this matter.

## II

### DISCUSSION

#### A. *Procedural Issues**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

#### B. *Standard of Review*

■ "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144 [86 Cal.Rptr.2d 816, 980 P.2d 371]; accord, *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1330-1331 [104 Cal.Rptr.2d 116].) In this case, there are no material disputed factual issues, so we review the trial court's determination as a question of law.

#### C. *Substantial Relationship Test*

The trial court stated that once Murchison & Cumming undertook depositions on behalf of Hartley & Hartley, the two firms were engaged in the joint defense of petitioner. Because of that joint defense relationship, and the application of the substantial relationship test set forth in *Flatt v. Superior*

---

*See footnote, *ante*, page 23.

*Court* (1994) 9 Cal.4th 275 [36 Cal.Rptr.2d 537, 885 P.2d 950], the court concluded Hartley & Hartley was presumed to have access to the confidential information real parties had disclosed to Murchison & Cumming. Due to that presumption, the court determined disqualification of Hartley & Hartley was required. Real parties assert the court correctly applied the substantial relationship test and, therefore, the petition should be denied.

### 1. *Successive representation*

 The substantial relationship test was summarized in *Flatt v. Superior Court, supra,* 9 Cal.4th at pages 283-284 as follows: "Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*. Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a *'substantial relationship'* between the subjects of the antecedent and current representations. [¶] The 'substantial relationship' test mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other. Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm. [Citations.]" (See also *Rosenfeld Construction Co. v. Superior Court* (1991) 235 Cal.App.3d 566, 573-576 [286 Cal.Rptr. 609]; *H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1452-1453 [280 Cal.Rptr. 614].)

 Applied to the case before us, real parties argue it is clear Murchison & Cumming would have been disqualified from representing petitioner. There was not merely a "substantial relationship" between the potential lawsuit with respect to which real parties consulted Genzmer and the ensuing lawsuit with respect to which Longo attended depositions, they were essentially one and the same. Because of this, Genzmer's knowledge should have been imputed to all members of the firm, including Longo.

 As explained in *Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at page 573: "Rule 3-310 of the State Bar Rules of Professional Conduct provides for the avoidance of representation of adverse

interests. It has long been recognized that knowledge obtained by one member of a firm of lawyers is imputed to all the other members. 'The imputed knowledge theory holds that knowledge by any member of a law firm is knowledge by all of the attorneys in the firm, partners as well as associates.' [Citation.]" (Fn. omitted.) Genzmer's knowledge thus tainted all Murchison & Cumming lawyers. As real parties view it, that taint seeped over to Hartley & Hartley as well.

Real parties fail to recognize that they are seeking an extension of the law. As explained in *Flatt v. Superior Court, supra,* 9 Cal.4th at p. 283, the substantial relationship test applies in the context of *successive* representation. It is most commonly employed to determine whether an attorney and the various members of his or her firm are barred from undertaking the successive representation of clients with potentially adverse interests. Here, it would typically be applied to ascertain whether Longo could represent petitioner, assuming Genzmer had an attorney-client relationship with real parties. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pp. 1147-1148 [attorney-client relationship established by lawyer's consultation with prospective client, even though actual retention of the lawyer does not result].) In other words, under the usual application of the substantial relationship test, the disqualification of Longo would be at issue, not Hartley & Hartley. Hartley & Hartley never represented real parties and there is no *successive* representation issue as to that firm.

To be sure, the substantial relationship test has been applied in different contexts as well. For example, when an attorney who actively represents one party in litigation moves to another law firm that represents the opposing party in the same matter, the attorney and his or her new firm will both be disqualified. (See, e.g., *Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109 [14 Cal.Rptr.2d 184]; *Dill v. Superior Court* (1984) 158 Cal.App.3d 301 [205 Cal.Rptr. 671].) The knowledge of that one attorney with confidential information is imputed to his or her new firm. Notice, however, that it is imputed only once, from the attorney with the confidential information, to the remainder of his or her firm. (See also *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pp. 1139-1141, 1152-1156 [when litigant's representatives consult with attorney who is of counsel to law firm representing adversary, attorney's knowledge imputed to entire firm with which he is associated]; *Klein v. Superior Court* (1988) 198 Cal.App.3d 894, 905-906, 913-914 [244 Cal.Rptr. 226] [plaintiff's law firm disqualified when one of its partners, while a member of a different firm, acquired confidential information concerning defendant].)

## 2. *Double imputation*

What real parties seek is a double imputation. They ask this court to impute Genzmer's knowledge first to Longo, and second from Longo to a different law firm entirely. This is just because Longo, the insurer's counsel who had every right to attend the depositions on behalf of the insurer (Civ. Code, § 2860, subd. (f)), agreed to cover the depositions for the insured's counsel. But real parties cite no California case casting the shadow of taint this far.

Other jurisdictions have erected barriers against the continuing spread of this penumbra of disqualification. Two cases in particular provide persuasive authority in this matter, i.e., *American Can Company v. Citrus Feed Co.* (5th Cir. 1971) 436 F.2d 1125 and *Panduit Corp. v. All States Plastic Mfg. Co.* (Fed. Cir. 1984) 744 F.2d 1564, disapproved on another ground in *Richardson-Merrell, Inc. v. Koller* (1985) 472 U.S. 424 [105 S.Ct. 2757, 86 L.Ed.2d 340]. In *American Can Company v. Citrus Feed Co., supra,* 436 F.2d 1125, a law firm representing the plaintiff associated local counsel, who was a member of the law firm that previously had represented some of the defendants. Despite the association, the law firm representing the plaintiff was not disqualified. The court declined to reimpute knowledge of confidential information from the particular attorney who previously had represented certain of the defendants, to all of the attorneys in his law firm, including the attorney who served as local counsel to the plaintiff, and then from local counsel to the law firm that associated him. The court determined disqualification was "unnecessary. Indeed, resort to so drastic a measure would not only be unwise, but would also set disturbing precedent. If the [defendants'] rationale were accepted, imputation and consequent disqualification could continue *ad infinitum*." (*Id.* at p. 1129.)

The court in *Panduit Corp. v. All States Plastic Mfg. Co., supra,* 744 F.2d 1564 followed suit. In that case, an attorney from the law firm representing the plaintiff formed a new law firm, which later merged with the law firm representing the defendant. The postmerger law firm was not disqualified. There was no reimputation of knowledge of confidential information first from the attorney handling the plaintiff's matter to the attorney who formed the new firm, and second from the latter attorney to the postmerger law firm. Providing alternative theories for its holding, the court cited *American Can Company v. Citrus Feed Co., supra,* 436 F.2d 1125 with approval and noted that courts have refrained from endorsing a double imputation theory. (*Panduit Corp. v. All States Plastic Mfg. Co., supra,* 744 F.2d at p. 1578, fn. 21.)

We agree with this approach. To reimpute knowledge from Longo to Hartley & Hartley would be to go too far. "The primary concern is whether

and to what extent the attorney acquired confidential information. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at p. 1148.) In this case, the attorney who acquired the confidential information was Genzmer, not Longo and not Hartley & Hartley. The extent of the knowledge of Longo and Hartley was described in their respective declarations, filed together with petitioner's opposition to the motion for disqualification.

Longo informed the court that he was a partner in the law firm of Murchison & Cumming, working at the firm's Santa Ana office. He further declared that a couple of months after he learned Hartley & Hartley had been asked to serve as *Cumis* counsel, he found out that certain of real parties "had consulted George Genzmer, a partner in our firm's Los Angeles office, about this matter. I have never been informed of the nature of what they said, nor have I reviewed the file, or asked to review the file, or asked about the nature of the consultation." Longo also stated that he and Hartley had "never discussed anything of substance on this case because [Mr. Hartley] was extremely busy preparing [another] case for trial. . . . Mr. Hartley was handling the pleadings in the case, but we had not had a chance to confer on them before the conflict issue arose." He further stated: "[N]either Mr. Hartley and I nor any member of his law firm discussed the content of the communications between the [real parties] who consulted with Mr. Genzmer . . . [;] I do not know what those [individuals] said because I have not asked and have not been told."

Hartley's declaration was similar. He stated that in February 2001, when the insurer asked him to step in as *Cumis* counsel, he "was busy preparing [his] cocounsel for a three-month trial in [another matter], . . . and was barely able to take on any additional work." Hartley also stated: "Mr. Longo agreed to cover the depositions in this case while I finished preparing for the [other] trial. Aside from 3 or 4 conversations with Mr. Longo about scheduling matters, I simply did not have the time to discuss anything substantive with him." He continued: "Sometime in April, Mr. Longo advised me that George Genzmer, one of the partners in the Los Angeles office of Murchison & Cumming, had been contacted before this litigation began by [real parties]. He did not tell me any of the details of the work that Mr. Genzmer performed, if indeed he performed any work, and told me nothing of the dispute between the [real parties]. I did not, nor would I, ask him about the nature of the communications between the [real parties] and Mr. Genzmer. Nor have I discussed or even requested information from anyone else at the Murchison firm concerning the communications between Mr. Genzmer and the [real parties] who consulted him."

Real parties make no suggestion that these declarations are in any way inaccurate or that either Longo or Hartley had any actual information

concerning the communications between real parties and Genzmer. Nonetheless, they urge that the simple fact Longo, unaware of real parties' contacts with Genzmer, covered a few depositions tainted the entire Hartley & Hartley firm. It is as though Longo "passed to [Hartley & Hartley] a hypothetical infection caught from other attorneys at" Murchison & Cumming. (*Klein v. Superior Court, supra,* 198 Cal.App.3d at p. 911.) This is one bridge too far.

### 3. *Normally imparted test*

Current thinking on the breadth of application of the substantial relationship test in California is expressed in *Adams v. Aerojet-General Corp., supra,* 86 Cal.App.4th 1324. In that case, law firm No. 1 represented the defendant. A partner in that firm, who had performed no work for the defendant, moved to law firm No. 2. Once there, that attorney represented the plaintiffs on substantially related litigation. The court held that the attorney was not necessarily disqualified. (*Id.* at p. 1341.) It stressed that "[b]oth rule 3-310(E) [of the State Bar Rules of Professional Conduct] and Business and Professions Code section 6068 . . . presuppose that attorney-client confidences are acquired by *individual attorneys,* not by law firms in general." (*Id.* at p. 1334.) The court concluded "that disqualification should not be ordered where there is no reasonable probability the firm-switching attorney had access to confidential information while at his or her former firm that is related to the current representation." (*Id.* at p. 1340.)

The *Adams* court enunciated this standard: "[W]here there is a substantial relationship between the current case and the matters handled by the firm-switching attorney's former firm, but the attorney did not personally represent the former client who now seeks to remove him from the case, the trial court should apply a modified version of the 'substantial relationship' test . . . [citation]. The court's task, under these circumstances, is to determine whether confidential information material to the current representation would normally have been imparted to the attorney during his tenure at the old firm." (*Adams v. Aerojet-General Corp., supra,* 86 Cal.App.4th at p. 1340; see also *Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at p. 574.) The court further expounded: "In answering this question, the court should focus on the relationship, if any, between the attorney and the former client's representation. It should consider any time spent by the attorney working on behalf of the former client and 'the attorney's possible exposure to formulation of policy or strategy' in matters relating to the current dispute. [Citation.] The court should also take into account whether the attorney worked out of the same branch office that handled the former litigation, and/or whether his administrative or management duties may have placed him in a position where he would have been

exposed to matters relevant to the current dispute." (*Adams v. Aerojet-General Corp., supra,* 86 Cal.App.4th at p. 1340.)

Applying this rule to the case before us, it is apparent that Longo might not have been disqualified from representing petitioner had he left Murchison & Cumming and joined Hartley & Hartley. There is no indication that confidential information concerning real parties would normally have been imparted to Longo during his tenure at Murchison & Cumming. This is especially true considering Longo and Genzmer did not even work in the same Murchison & Cumming office. Even though Longo himself might not have been disqualified had he joined Hartley & Hartley, real parties would have us disqualify that firm, thus imposing an even more stringent standard on a more remote party.

If we apply the *Adams* test directly to Hartley & Hartley, it does not appear the confidential information real parties disclosed to Genzmer would normally have been imparted to Hartley & Hartley simply by virtue of the fact Murchison & Cumming covered a few depositions for that firm. Real parties see it differently, however. When moving for disqualification, they asserted Civil Code section 2860, subdivisions (d) and (f) imposed a duty upon Murchison & Cumming and Hartley & Hartley "to share confidential information so as to provide [petitioner] the fullest defense they [could] muster in his behalf." They implied that this statutory provision mandated that Murchison & Cumming disclose real parties' confidential information to Hartley & Hartley. We disagree.

### 4. *Civil Code section 2860*

Civil Code section 2860, subdivision (d) provides in pertinent part as follows: "When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action. . . ." This subdivision pertains to the duty of counsel representing the insured, in this case Hartley & Hartley, to provide information to the insurer. It does not obligate counsel for the insurer to provide information to the insured.

More nearly on point, Civil Code section 2860, subdivision (f) states in relevant part: "Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in

all aspects of the litigation. Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured." This provision does require an exchange of information between the respective counsel. Yet it does not make it possible for an attorney, such as Longo, to disclose information he or she does not possess. Moreover, it does not sanction the disclosure, by insurer's counsel, of the confidences of another client.

*Flatt v. Superior Court, supra,* 9 Cal.4th 275 provides support for this point. In *Flatt*, the plaintiff met with one attorney concerning a transactional matter previously handled for him by another attorney. They met for an hour and the plaintiff left relevant documents with the new attorney. A week later, the new attorney returned the documents and informed the plaintiff that she could not represent him in an action against his former attorney because she had learned her firm had a conflict in that it represented his former attorney's firm in another matter. The new attorney did not inform the plaintiff of the statute of limitations for pursuing his former attorney. In a suit against the new attorney for legal malpractice for having failed to provide such information, the California Supreme Court held the new attorney had no duty to do so. It stated: "In our view, *assuming* that the circumstances of the . . . meeting were sufficient to make [the plaintiff] a client of [the new attorney], her duty of loyalty to [the plaintiff's former attorney], the firm's existing client, required her both to sever any professional relation with [the plaintiff] promptly upon learning of the conflict and, as a legal complement to that obligation, absolved her of a duty to provide *any* advice to [the plaintiff] adverse to the interests of [his former attorney], including advice respecting the statute of limitations governing, and the advisability of engaging alternative counsel to pursue, the contemplated lawsuit against [the former attorney] . . . ." (*Id.* at p. 281.)

In other words, Murchison & Cumming's ethical obligations towards real parties would have precluded disclosure of any confidential information to petitioner, irrespective of any Civil Code section 2860 obligation to share information with Hartley & Hartley. ■ "Few precepts are more firmly entrenched than that the fiduciary relationship between attorney and client is of the very highest character [citations] and, even though terminated, forbids (1) any act which will injure the former client in matters involving such former representation or (2) use against the former client of any information acquired during such relationship. [Citation.]" (*Yorn v. Superior Court* (1979) 90 Cal.App.3d 669, 675 [153 Cal.Rptr. 295]; accord, *People v. Thoi* (1989) 213 Cal.App.3d 689, 699 [261 Cal.Rptr. 789].)

Attorneys are "member[s] of an ancient, honorable and deservingly honored profession." (*People v. Mattson* (1959) 51 Cal.2d 777, 793 [336 P.2d 937].) We call them "officers of the court." (*Ibid.*) Let's practice what we preach and treat them with the respect they have earned. As we recently stated in *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 834 [115 Cal.Rptr.2d 847], "the court should start with the presumption that, unless proven otherwise, lawyers will behave in an ethical manner." ▉ We presume Murchison & Cumming abided by its duty to real parties to keep their confidence inviolate. (Bus. & Prof. Code, § 6068, subd. (e).)

## III

### CONCLUSION

Real parties characterize the issue before this court as "whether the doctrine of imputed knowledge requires the automatic disqualification of Hartley & Hartley" due to its "joint representation" of petitioner along with Murchison & Cumming. It does not. We decline to fashion an extension of the doctrine of imputed knowledge to automatically disqualify *Cumis* counsel, when the insurer's attorney covers a few depositions for *Cumis* counsel and, unbeknownst to the insurer's attorney, his firm has a conflict of interest.

Longo and Hartley each declared no confidential information passed between them. In addition, Longo declared he never received any confidential information he could have disclosed. Furthermore, real parties have suggested nothing to indicate that the confidential information they provided to Genzmer would normally have been imparted to Longo, or for that matter to Hartley & Hartley. There is simply no demonstrated reason to double impute the knowledge of confidential information from Genzmer to Longo and then from Longo to a separate law firm altogether. "Carriage of this imputation-on-an-imputation to its logical terminus could lead to extreme results in no way required to maintain public confidence in the bar." (*American Can Company v. Citrus Feed Co., supra,* 436 F.2d at p. 1129.)

## IV

### DISPOSITION

The petition is granted. The alternative writ is discharged. This court's previously issued stay order is dissolved. Let a peremptory writ of mandate issue directing the superior court to vacate its order disqualifying Hartley &

Hartley and to enter a new and different order denying real parties' motion for disqualification. Petitioner shall recover his costs.

Sills, P. J., and O'Leary, J., concurred.